Our next case is Bennett Regulator Guards v. Atlanta Gas Light Company, No. 17-1555 Mr. Porter, whenever you're ready. Thank you, Your Honor. May it please the Court, I'm Wayne Porter on behalf of Bennett Regulator Guards, Inc., the appellant. The Board committed reversible error when it instituted inter partes review because Atlanta Gas filed the petition for inter partes review more than one year after it had been served with a complaint of patent infringement. The Board created an exception to Section 315B that finds no support in the legislative history or in the statute itself. Because a trial never should have been instituted, the final written decision should be vacated and expunged. Let me ask you a question about that. Assuming you're correct and that the statute means what it says and says what it means, and if you're served with the complaint, you've been served. What are the entire consequences? You say we should vacate the Board's decision? Yes. What about the Board's decision with regard to sanctions? I think that that would stand. Because? The main reason is, and there's... Let's just back up. Yes. When the Board receives a petition for review that's out of time... Yes. What should it do? It should throw it away, right? It should send it back and forth. Not institute, I would say. We don't even open our door, right? Yes. Right. If that were the case, how could they get the sanctions? Well, because they improperly opened the door, conducted a trial, and during the course of the trial, there was misconduct by Atlantic... We have a case that stands for the proposition that the sanctions proceeding is independent of the other aspects of the proceeding, so as to survive, even the fact that the petition was of no enforcement effect. Yes. I have two cases. Cooter and Gell v. Hartmarks. Number one, it's a Rule 11 case. Do you have a site? Not handy. I can get it for you. Okay. The other is Willey v. Coastal Corporation, which is a more recent Supreme Court case that validates the same principle. The idea being the attorneys and the parties before the court are subject to regulation by the court. And even though subject matter jurisdiction may not even exist, the court still has the power to enforce sanctions against the parties and the attorneys. Okay. So we're on that topic. I couldn't find a case... Let me ask the question this way. My understanding is that on sanctions, on the monetary sanctions against Atlanta, the number hasn't been selected yet. Is that correct? That's correct. That still hasn't happened? That has not been determined. Okay. Well, if this case were coming from a U.S. District Court and there had been a sanctions issue, a determination that sanctions were appropriate, but the sum of money had not been established... Yes. ...then this court would not have authority to deal with the sanctions issue until the award was finalized. That's VIEW Engineering against Robotics. So that's from a district court. I haven't found a case of sanctions from the Patent Office where the number hasn't been determined yet. I'm not aware of one. I guess you're suggesting it raises the possibility of being sent back and then coming back up here for the determination of the propriety of the award, whatever it is. Yes. I think that's a possibility. So the board's decision was grounded on an admitted legal fiction that dismissal of the complaint resulted in nullification of the service of the complaint such that the statute should not apply. There are a number of reasons why that is wrong. First of all, the statute is clear and unambiguous. There are a number of Federal Circuit and Supreme Court cases that say when you have a clear, unambiguous statute that there is no room... That's the rub, isn't it? I mean, your argument is that the statute is unambiguous... Yes. ...and therefore any regulation or any view to the contrary would be of no effect. Correct. What happens if I look at the statute and I say, does the statute answer the question? The question is what force and effect is a summons where the case has been dismissed without prejudice? I don't know that that's an issue. Well, it's like a gap. It's like an issue that isn't really resolved by the language of the statute itself. I don't believe it's up for a government agency to make a policy determination as to what to do with this alleged gap because that's Congress' job. Do you think there's a gap? No. Well, you have to say that because the gap is what let Chevron come into play. Well, this statute deals with the jurisdiction of the board in the first instance. What we're talking about here is the board creating a ruling that, in effect, expands its own jurisdiction. That's improper under COASO, SAS, I think the Wi-Fi versus Broadcom decision in January of this year. I thought there was notice and rulemaking allowing comment and such where they said the rule for this gap-filling situation is that if the complaint is dismissed without prejudice, we're not going to treat it as a time bar. If there was something like that, would that change your view at all? In other words, if a regulation had been put in place? Yes. No. I think it's ultra-virus. It's extrajudicial. It's not the job of the Patent Office to determine what it can do beyond the words of the statute. It's your view because a complaint was served? That's it. A complaint was served. It doesn't matter what happened later. Yes. And there's other reasons why that should apply. This court itself, for example, has jurisdiction over… …if a complaint was served improperly. Say, for example, the local rules require you to serve the complaint in a certain fashion, and it wasn't served in that fashion. There's a body of law on what constitutes service and what constitutes a complaint. So I think it would be appropriate to inquire as to whether or not, in fact, the complaint had been served. There is room for interpretation, if you will, on what constitutes the service of a complaint. I would think that you would have to determine, was it, in fact, served? Whatever service means. Whether it was, in fact, served. It was, in fact, served, but it was served incorrectly. Well, Atlanta Gas… In my hypothetical. I mean, say the service requires you to use ABC Service Company, and they used EEF Service Company. It was served. There's no question about that, literally, right? Yes, that's true. But you'd leave a gap there for interpretation? Atlanta Gas has said that Rule 4 has to be strictly complied with. It's been complied with in this case. There is no legitimate argument that this complaint was served, and it was a complaint. So I know you're dealing with a hypothetical, but I don't know how far we could carry that because we have a properly served complaint. Well, our job is to explore the parameters. I mean, I understand your plain meaning real clearly, and we're going to hear from the other side when they get up about the fact that there is some window of gapping or of room for interpretation here. It has been a longstanding policy, has it not? Hasn't the board regularly greeted petitions for review that were filed more than a year after… You mean since the initiation of AIA? Yes. I would argue that their interpretation is built on a foundation of sand, that these cases that they rely on, in fact, don't stand for what this fiction is alleging. And we have case law in our jurisdiction, not from the IPRs, but in other settings where we have treated the dismissal of a complaint without prejudice as if the complaint never issued, as if the sum is never issued. We have a couple of cases… Are you referring to Beck v. Caterpillar, for example? Let me put it this way. The case law that the board relied on had nothing to do with going back in time and pretending that the complaint never was served so as to create a new statute of limitations. Are you referring to Bonneville and Graves? Yes. And also the cases cited by Atlanta Gas. You can look, for example, at Beck v. Caterpillar. These cases essentially are tolling cases or saving statute cases that don't adjust or attempt to adjust the initial trigger that started the statute of limitations. In Beck, for example, Mr. Beck got an adverse ruling from his union, and that, under federal law, triggered a six-month statute of limitations to file a complaint. He timely filed a statute of complaint. He filed his complaint in federal court. And along the way, he dismissed it and then later attempted to file after the six-month period had run. He argued that an Illinois saving statute should be imported so as to grant him extra time in which to file the second complaint. The court said, no, you have a federal statute with a federal statute of limitations, and it's our policy not to import saving statutes from the state. So you filed out of time. And that's more or less what happened here. In the first IPR filed by Atlanta Gas, they filed timely. Proceedings on that case concluded about a year later. And then approximately a month after the proceedings were concluded, Atlanta Gas files a second IPR. But that second IPR occurred more than a year after service of the complaint. Just like in Beck, the statute ran. But the board says, no, we're going to rely on cases that deal with tolling, let's say, to go back in time and pretend that the initial triggering event never happened. I want to ask you about the McJunkin case. I looked in the appendix at JA998, and it appears as if that case was also dismissed without prejudice. Is that correct? That was dismissed fairly recently. What happened there was... A settlement. I beg your pardon? A settlement. Well, it was dismissed pursuant to a tolling agreement. So that case has not necessarily gone away. But there's a good example of what could happen to a patent owner who could be unfairly prejudiced. Because the McJunkin case was dismissed more than a year after the complaint had been served. So under Atlanta Gas's theory, McJunkin, after four years, could now come in and say, well, statute never started to run. I'm good to go again. That doesn't seem fair to the patentee. So I think it cuts both ways. And Congress thought about this sort of thing. I mean, right in the text of 315B is an exception. The exception being in the case of Joinder, the statute of limitations doesn't apply. Now, the fact that Congress provided for a single exception within the statute itself implies that there were no other exceptions that are possible. You're into your rebuttal time. Would you like to save your time? Yes. Well, yes, I'll save the rebuttal time. There are some other points I have, but I guess I could address them in a rebuttal. Well, let me just say this. The merits of the case are very interesting. So that opens the door in case you want to use your time to respond to them on the merits. All right. Thank you.  Good morning, and may it please the Court. What's your take, Mr. Joseph Brown, if we agree with your adversary and say that your client stubbed its toe on the timing on 315B? He says we should vacate except for sanctions. Do you agree with that? I think you still have to vacate. I agree with him on this point. I agree with him on this point, which is that if he has— All right, let me ask you a question. You vacate except for the sanctions. That's his position, assuming he's right on the 315 issue. I think you still have to vacate and remand on sanctions. And I say vacate and remand. This is why. We agree that if— But sanctions are still a lie, even though the merits are dead. But they're changed. Pardon me? But changed, which is why I said vacate and remand. The reason it's changed is that part of the premise for sanctions is whether there's any harm, right, and proportionality and harm. And if we're going to decide as if the IPR never happened, then I think that does change the— I think that changes the board's analysis. One, then it gets really hard to show harm and proportionality. And so I do think that at a minimum— And the other thing is the boards seem to be trying to maybe strike some sort of a compromise. We're not going to dismiss the suit. You agree that we can't reach the sanctions, the merits of sanctions itself, because there's been no monetary reward? No, you can, and here's why. This is the very— You can. We can reach it, notwithstanding georobotics? The reason is—this is the very unusual case in which pendant appellate jurisdiction is appropriate. The reason being that Bennett's appeal properly raises the sanctions order, properly raises whether they argue that they were entitled to dismissal as a sanction. That's one of their arguments. Not one of their better arguments, but one of their arguments. And so as part of our defense to that, one of our arguments in response to their appeal is no sanctions are appropriate. There's no basis for any sanction. With that being before you as part of Bennett's appeal, we're then raising essentially the same point as part of our cross appeal. And under the—so it's the Supreme Court's decision that sets forth the standard is Swinton v. Chambers, 514 U.S. 35, on pendant appellate jurisdiction. You didn't even tag the merits of the sanctions issue onto your defense to their challenge that the sanctions should have been thorough. Because our cross appeal then is just inextricably intertwined with the subject matter of their appeal, which is the sanctions order. And we agree that we have to file—we have to file a cross appeal on that because it would give us— we could then get greater relief. Not just defend their appeal, but then there'd be no sanction at all. That's why we had to file a cross appeal. But because the subject matter of the cross appeal is so inextricably intertwined with the subject matter of their appeal, it's the rare case for pendant appellate jurisdiction. And I would also point out, and it's not a separate legal argument, but just as a practical argument as to why pendant appellate jurisdiction is important here, that the board is pretty obviously waiting on this court to decide the sanctions issue. The board could have decided the amount of sanctions a year ago. And it's pretty clearly waiting on this court. So with the board waiting on this court, you know, the parties serving it up for this court, I think it is important to exercise the proper pendant appellate jurisdiction because of the inextricably intertwined nature of the two appeals. Now, the only other housekeeping matter would be SAS. Here, of course, the board held that every claim in the patent is unpatentable. So it did not institute on some grounds. But those grounds are then, you know, just would be alternative, would be superfluous in light of the board's decision. So there's no SAS issue in this posture of the case. You're not seeking a remand? Is that what your position is? Well, certainly not now, right, where all the claims are unpatentable anyhow. My point was going to be that if the court were to, if this court, the reason I think it's just practically easy in this case is that if the court were to have issue with the board's merits determination, I think this court would logically remand anyway. I think the posture would be remand for further proceedings. And then the remand on further proceedings, there's no doubt that the board would then need to take up any alternative. If it found that some of the existing grounds were not appropriate, it would then need to take up the alternative ones. So you're kind of pleading SAS in the alternative, if you will. Like if we don't affirm and agree that all the claims are invalid, then you would say it should be remanded to the PTAB for consideration of the non-instituted grounds. Right. So that's a contingent prayer for SAS relief? Right. Is that right? I understand what you're saying. Right. At this point. You're making that today for the first time? Yeah. Even though SAS was decided a month and a half or so ago, haven't you waived the right to make that argument? I'd say, well, the reason. Isn't it a little late to do it here today to us, Mr. Joseph? I understand what you're saying. I do. I understand what you're saying. The answer is, isn't it late? The proper answer to that question is, and I understand what you said. Yes. The answer is normally yes. The answer is yes. Yes. But my point, though, is that if this court. So normally yes means the answer is yes. You waived the right to assert an SAS right. No, because not for remand. So in other words, my point is just this. I think that if the court were to disagree with the Board on the Merits, I don't know exactly what the ground would be, but if the court were, I think the proper remand, forget about SAS. I think the proper remedy in this court, anyhow, is vacate and remand to the Board for further consideration of certain grounds under a different claim construction or whatever. Once it's back in the Board, I think the Board would then. We don't need the court to say anything about SAS. If we were to reverse the Board, why would we vacate and remand? If you would render judgment that these claims are all patentable as a matter of law. Sorry, you're right, you could. It's just normally in an APA case, it's a vacate and remand for further consideration. If they were wrong. How many bites of the apple do you get? Well, it depends on the ground on which they were wrong, I suppose. Here are these claim constructions. If you could disagree with us on a claim construction, I think you would logically. Haven't we sort of agreed that even if we were to find some error with the Board's opinion, you have waived any SAS right to a remand? Yeah, we've waived a right for this court. We have waived a right for this court to remand based on SAS. Oh, I'm sorry. Prudentially, if we decided we thought we ought to remand, it would go back. And then presumably you would stand up in front of the Board and say, well, you want some more justification. That's exactly my point. And you might be told by them that you've waived. They could take it up at that point. But my point is just we thought that practically, we didn't think it was worth making it. Obviously, I was wrong, very wrong, worth making an issue of it. Because at this point, we've won on all claims, and logically it would go back if there was an issue with that, and we would take it up there as our point. I think that's all I have on those matters. Can I ask you a question about the claim constructions? Yes, of course. And I'm going to ask your adversary as well. Which of the claim constructions, in your view, matter in determining the outcome of the case? Because I wasn't sure all of them did. Many of them don't. I agree. In terms of the appeals, obviously defined by the patentability issues that have been raised on appeal by the appellant, naturally. The ones that seem to matter are the claim construction of the gas pressure regulator terms, the claim construction of valve means, because those are efforts to import the internally relieved limitation from the third-party product manual. Baffle means doesn't, I don't think. Because they don't, again, this is the issue with the high-pressure gas, but there's no separate patentability issue about high pressure. All of these systems take high pressure and low pressure, lower pressure out. That's the nature of it. The outlet vent tube or vent means limitations, the two arguments there, they have this downwardly facing end portion. Again, no patentability argument about that. And they also want the vent tube wide enough to accommodate the discharge of high-pressure gas, but again, not seem to have any separate patentability arguments about high pressure. And then the high-pressure gas source versus low-pressure gas line, again, no patentability arguments on that. I think it's all about internal relief. And they admit that the patent doesn't say a thing about whether a gas pressure regulator is internally relieved. And there's nothing about that in the claims, the specification, the prosecution history. So it's just a very naked argument that the claim should be construed to incorporate features from third-party product literature, which in our understanding would be completely unprecedented as a claim construction matter. Do you have any further argument on the 315B issue? Of course. With respect to 315B, it's a very basic fundamental principle of law that Congress legislates against, that dismissal without prejudice leaves both parties as if the action had never happened. And it's been applied by a wide variety of courts in a wide variety of different contexts. The reason it's a very important principle is that dismissal without prejudice is supposed to be without prejudice to both parties. So it's without prejudice to the plaintiff because the plaintiff can refile. It's without prejudice to the defendant because the defendant's rights are legally unaffected by anything that happened during the suit that was dismissed without prejudice. And it's applied here, which makes that principle especially important here, because if you have a scenario where a plaintiff files a suit, it's dismissed without prejudice, a year goes by, the plaintiff refiles, then but for this very important legal principle, the defendant's rights are prejudiced by the plaintiff's litigation decisions, pursuing a suit that was dismissed without prejudice, which is why we think the principle applies in particular for us here. Now, their argument about – it's been applied, as I said, in a wide variety of different contexts. One of them has been statutes of limitations. And their argument there is, well, those are factually distinguishable because those dealt with when – the point there was that when a suit that's dismissed without prejudice is pending, that doesn't toll the plaintiff's limitation period. So the plaintiff's limitation period for filing another suit is unaffected by the fact that that person – Yeah, well, those cases don't deal with a statute that on its face says you've got to file it in one year for the service of the complaint. And it's service of the complaint, not filing of a lawsuit. Right, service of the complaint. But again, service of the complaint – Can you just take the words of the statute and explain to me how your argument can fly, given the words of the statute? Well, the reason is that when Congress is – this is not one. The specific question here is just something that's not specifically dealt with in the statute. And therefore, when you have a term that – When your adversary says, well, that statute had one exception, and that shows that they knew how to carve out exceptions. It had an exception for something that was not dealt with by a background rule. In other words, if you have – you had an exception there for a very quirky circumstance that I don't know where else it would apply. That doesn't indicate that Congress was even thinking about this question. Or, but since the Congress was thinking about it, which I'm sure it wasn't, maybe it was thinking, well, we have a background rule for this situation, so we don't need to address it. We'll address something else that doesn't. But the whole point of background rules is that if a statute does not specifically address something, the statute's right in light of that. Take a couple other examples. This Court's decision, for example, in the – sorry. In the Procter & Gamble case that's discussed in the briefs. There you had a statute that said that a stay could be granted at the request of the patentee. Well, this Court held that a stay could be granted at the request of either the patentee or the accused infringer, that the settled background rule is anybody can request a stay. So when Congress enacts a statute saying one person can request a stay, normally you would just look at that statute in isolation and say, well, that's who can request a stay. But no, in light of the settled background rule, everyone can. Or Akamai is somewhat of an example as well, where for direct infringement, I mean the statute says whoever infringes a method is liable. It's well settled that infringing a method means performing all the steps. But this Court looked to settled background rules of attribution in order to determine that, well, you don't perform all the steps, but you're responsible because of your relationship with someone else who performed others. So, yes, there's statutory language. If you just look at it, don't think about what situations might arise, you get one scenario. That's the whole point of it being a settled background rule. Also, as came up earlier, there is clearly need for some interpretation here in light of background rules. If you serve a complaint that hasn't been filed yet. You have a very generous concept of how background rules create gaps and ambiguities. Do you have a case for that proposition? The Congress legislated against it. You said, well, there's a background rule here that ordinarily when you dismiss a case without prejudice, it means it never happened, right? That's your background principle. It just seems to me, I haven't quite heard it in such a sweeping fashion, that you sort of take all background principles that lie out there in the air, and then every statute presumes that all those background rules are extant. So that if you can possibly find a background rule that maybe you wonder about with the language of the statute, it creates a gap that therefore allows for an agency interpretation. Is that where you're going? Well, there are two ways of looking at it in terms of the agency interpretation. One is just that even if there's no Chevron, it's still up to the court to construe the statute in light of the settled background rule, which, as I said, is especially important here. Because the whole point of the background rule is then that dismissal without prejudice will be without prejudice to anyone. Is that the direction you want us to go? I mean, help me if I'm writing an opinion in your favor. You want me to do background rules for general statutory interpretation and ask you any reliance on Chevron or what would it be, our here? There's no regulation, right? No, it's not our. Our first point is the court could do that if there wasn't Chevron. Our second point, then, as you know, is that if you think that there is an ambiguity in how to reconcile the statutory language that doesn't address this point specifically with the settled background rule in light of the context and policies that dismissal without prejudice really ought to be without prejudice. The agency's interpretation has come through litigation, right? Not through rulemaking. Right. Thanks for bringing me back to that. I was going to just tell you to ask a question about that. I mean, the case on page 51 of our opening brief, it's one of the Microsoft cases, points out the Chevron deference applies to rules created by adjudication as well as by rule. Agencies have discretion how to come up with their rules. And if they establish a rule in adjudication. On this one, you'd say it's not litigation driven in this case because it's happened before, right? Right. This is a principle step. Do you know how many cases in which this has occurred where the PTAB has said there's no time bar because the case was dismissed without prejudice? There are at least a couple others for sure. A click to call is one that we cite in our brief. There's also, it's not momentum. There are a couple cited in our brief. I think there are a couple others. It does come up. I mean, it absolutely comes up. And it's a general principle of statutory interpretation, which is why if the agency wants to cite a general legal question in the context of adjudication as opposed to a rulemaking case, it's still entitled to Chevron deference. Mr. Josepher, were you going to save two minutes of rebuttal time for your cross-appeal? Yes. And on sanctions, yes. I think at best. Okay. This court doesn't want to hear anything more on sanctions right now. Thank you. All right. Could we give Mr. Porter, restore his time and give him an extra two minutes to give him the same amount of time as Mr. Porter. Thank you, Your Honor. I have two situations where background laws or cases apply to this opposite. Wait a minute. No, it should be five. We had 10 up here. That's not right. Just back. I have at least two situations where there is a background presumption that goes contrary to Atlanta Gas's position. This court is a court of appeal from the Court of Federal Claims. The jurisdictional statute is 28 U.S.C. 1500, which presents an election that is similar to the election in Section 315A. It's a binding election that occurs up front, and if you go in the district court, you lose the right to go in the Court of Claims. We know 1500. Okay. I thought you might. You then know Keene versus United States. 508 U.S. 200, 1993, which says we are not going to permit exceptions to go beyond the statute to permit that binding election to be withdrawn, even in cases where subject matter jurisdiction didn't exist in the district court. That's background law relative to this issue. Another one is the removal statute. It's 28 U.S.C. 1446C1. That statute is structured very similarly to 315B. It says that commencement of an action starts a one-year period of limitation for removal unless the plaintiff engaged in bad faith. So there, Congress had a similar statute that was triggered in the same way, but it provided an exception. So the fact that with this background exception for removal, that they then do not provide an exception in 315B is telling. Did you have an answer to my question about which claim constructions matter in actually determining the outcome of the case? Well, our position was that properly construed, since the patent has expired, since there are ambiguities, the patent office, pursuant to case law, is supposed to resolve those ambiguities in the favor of the patentee if the specification provides support for the resolution. And so one, for example, would be the meaning of regulator, gas regulator. The board said regulator could be any gas regulator. But there are a number of different types of gas regulators, and the one disclosed in the patent is only one type. It's an internally relieved regulator. And that is consistent with the description in the patent of passing gas through the gap between the baffle and the skirt, because internally relieved regulators are the kind that relieve overpressure by passing gas through the outlet vent. The prior art cited against the 029 patent is an externally relieved regulator, which has a small vent, 15, that only passes breathing air. So that's why the best reference, Peterson 087, has a 1 16th inch gap that is expressly stated to exclude insects. But do you agree that you've raised a good number of claim construction issues, some of which don't seem to, the interpretation of which doesn't seem to implicate whether the claims have the board's validity decision. And so what do we do with respect to those claim terms? Because we're not supposed to be looking at claim constructions that aren't determinative of the PTAB's decision below. With respect, I think the case should, the board never had jurisdiction. Pronouncings of the court, or excuse me, the board, on the merits of the patent are beyond the scope of the board's jurisdiction. So we're talking, in a sense, a hypothetical as to if the board had proper jurisdiction, now have they also properly. I think that's what the presiding judge was asking. Assuming we have, that the board had proper authority to proceed. On appeal, you seem to raise, let's just make a hypothetical. You raise 10 claim construction issues, five of which matter and five of which don't. So I think what the presiding judge's question was, what are we supposed to do with the five that don't matter? I mean, are we obligated to adjudicate the claim construction issue if there are no consequences? First of all, I'm not so sure that all of them don't have some consequence concerning validity of the patent. Just take one and assume it doesn't have any consequence and then answer the question of what we're supposed to do with it. Our position is it should be remanded. What? It should be remanded for a proper analysis by the board. The board did not properly explain its ruling, like under the Nuvasiv case. There were just broad conclusions. It's a harmless error. I don't think it's harmless since it invalidated the patent claims. It didn't affect the judgment. I think what we were talking about is there are certain claims that are challenged on appeal as to the construction. Yes. Those claims don't seem to matter for either anticipation or obviousness for the decision. So the question is, well, why did you raise them? I mean, can't we just ignore that? You mean, like, for example, the claim that involved the material from which the vent protector was made? Sure. Sure, that would be a good example. Yes, Omay patent. The board used hindsight analysis to pick a reference, just pulled it out of the air. It turns out that the expert for Atlanta Gas made no analysis as to whether that material would actually be useful. Let alone, the board never made a finding as to why, I'd say an improper finding as to why one skilled in the art would have been motivated to solve this problem in the first instance. Okay. Let alone turn to this particular material. Okay. Thank you, Mr. Porter. Okay. Thank you. Mr. Gersper, you have two minutes. Thank you. So limited to sanctions here. On the jurisdiction question we talked about before, two sites that might be helpful to you with respect to the meaning of the inextricably intertwined standard. This court doesn't have a case on it. But there's a Fifth Circuit case that explains that issues are inextricably intertwined if the challenges involve overlapping issues of law and fact. And that's Comstock Oil, 261F3rd, 567, page 571, Fifth Circuit, 2001. This goes to your opinion jurisdiction issue? For the appellate jurisdiction issue, because the two appeals are inextricably intertwined, that creates, that provides. This is your desire to reach the merits of the sanctions? Correct. Okay. Correct. For our cross-appeal. It will hurt me to understand you. I'm just trying to figure out which, because we're talking about jurisdiction of the board generally because of the 3.5 problem. It's true. There are several jurisdictional issues here I was talking about. I'm just trying to figure out which one you're talking about. Understood. And yes, you're right. Thank you. I guess right. You didn't tell me when you started out. And then the other case dealing with this is. I guess I get an A for that one, right? You're definitely doing better than me today. It says the one appeal, the sure section if the issue is quote subsumed in the other, which is what we have here. Right. And that's Hadex against Johnson, 228F3rd, 662, page 669, 6th Circuit, 2000. 228F3rd, what was the next number? I just didn't hear. Sorry. Page 662. Thank you. And then the pen side is page 669. It's from the 6th Circuit. Now, obviously as to the merits of the appeal, it's a simple point. There's never been any finding of any actual violation here with respect to the Southern Company being an RPI. The court relied on an admission that simply doesn't exist because the purported admission said that it's not an RPI, but that to avoid unnecessary vexatious litigation, which is normally the opposite of sanctionable behavior, we would just list it as such going forward. It has the status of an RPI, but that doesn't mean that we did anything wrong by not listing it sooner. Without that as a basis for the sanctions order, there simply isn't one. Thank you, Mr. Josepher. We thank counsel. The case has been submitted.